UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HORIZON HOUSE,<br><br>Plaintiff,<br><br>v.<br><br>CAIN BROTHERS & COMPANY, LLC,<br><br>Defendant. | CASE NO. C11-1762JLR<br><br>ORDER DENYING MOTION TO TRANSFER VENUE |

## I. INTRODUCTION

Before the court is Defendant Cain Brothers & Company's ("Cain Brothers") motion to transfer venue to the Southern District of New York (Dkt. # 20). The court has considered the parties' memoranda and accompanying declarations filed in support and opposition to the motion. For the reasons stated below, the court DENIES the motion to

transfer venue.[1]

## II. BACKGROUND

In 2005, Plaintiff Horizon House, a Washington non-profit corporation, entered into an "interest rate swap transaction" with Lehman Brothers Special Finance, Inc. ("LBSF"). (Siver Decl. (Dkt. # 25) ¶ 4.) The notional amount of the transaction was $28,400,000.00. (*Id.*) LBSF subsequently collapsed in 2008 and filed for bankruptcy. (*Id.* ¶ 5.) Because the agreement between Horizon House and LBSF was ongoing at that time, Horizon House sought the advice of Cain Brothers to help terminate its arrangement with LBSF. (*Id.* ¶ 5.) Specifically, Horizon House's Chief Financial Officer ("CFO"), Carl Siver, communicated with Katherine Kirchhoff, the Managing Director of Cain Brothers' Los Angeles office. (*Id.* ¶ 8.) After those initial communications, Mr. Siver negotiated an agreement via e-mail and telephone from Seattle, Washington with Ms. Kirchhoff. (*Id.*) Under the agreement, Cain Brothers was to coordinate the termination of Horizon House's financial arrangement with LBSF. (*Id.* ¶¶ 7-8.) Cain Brothers drafted, signed, and delivered an engagement letter to Mr. Siver in Seattle, who, after obtaining the consent of his colleagues, signed the agreement. (*Id.* ¶ 9.) The signed agreement contains no jurisdictional clause. (Comp. (Dkt. # 1-1) Ex. B.)

The instant dispute between Horizon House and Cain Brothers arose following the alleged failure of Horizon House, who was being advised by Cain Brothers, to properly terminate the financial arrangement with LBSF. (Comp. ¶¶ 10-21.) Under the original

---

[1] No party has requested oral argument, and the court deems this motion appropriate for disposition without it.

contract between Horizon House and LBSF, the terminating party can select the date of termination. (Comp. Ex. A § 6.) According to Horizon House, Cain Brothers set the date of termination for October 23, 2008, but did not instruct Horizon House to forward the requisite documents to LBSF until the following day—causing the termination to fail. (Comp. ¶ 17.)

Horizon House subsequently filed claims against Cain Brothers for breach of contract, negligence, indemnification, and contribution in Washington State Court. (*Id.* ¶¶ 22-34.) Cain Brothers removed the action to this court. (Notice of Removal (Dkt. # 1).)

Because Horizon House allegedly failed to correctly terminate the agreement with LBSF, LBSF filed a lawsuit against Horizon House seeking $5.2 million in a separate action from the instant case. (Comp. ¶ 21.) That action is set to be mediated in bankruptcy court in the Southern District of New York. (Siver Decl. ¶ 18.)

### III. ANALYSIS

**A. Legal Standard**

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district where it might have been brought if it is for the parties' and witnesses' convenience and in the interest of justice. 28 U.S.C. § 1404(a). The court has broad discretion to decide when considerations of convenience and fairness warrant a transfer of venue. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

In *Jones*, the Ninth Circuit articulated the factors that a court should consider when ruling on a motion to transfer venue under 28 U.S.C. § 1404(a). *Id.* at 498-99.

Under *Jones*, the court must weigh the following factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources of proof," and (9) the public policy of the forum state. *Id.*

**B. Motion to Transfer Venue**

The court has reviewed the factors articulated by the *Jones* court and concluded that the balance of the factors, as applied to the present case, do not favor transferring venue. Accordingly, for the reasons described below, the court denies Cain Brothers' motion to transfer venue.

**1. Location Where the Agreement Was Negotiated and Executed**

Horizon House and Cain Brothers negotiated their agreement outside of the Southern District of New York, and Horizon House executed the agreement in Seattle. As noted, Mr. Siver, Horizon House's CFO, negotiated the agreement from Seattle with Ms. Kirchhoff of Cain Brothers, who was then based in Los Angeles. (Siver Decl. ¶ 8.) Moreover, Cain Brothers drafted and signed a copy of the agreement and presented it to Mr. Siver in Seattle, where it was executed.[2] (*Id.* ¶ 9.) Consequently, the court finds that

---

[2] Cain Brothers states that the agreement was drafted and "executed" by Cain Brothers in New York. (Mot. (Dkt. # 20) at 13.) However, "execute" is a term of art meaning to "to bring a legal document into its final, legally enforceable form." *Black's Law Dictionary* (9th ed. 2009);

the location where the agreement was negotiated and executed weighs in favor of denying the motion to transfer venue.

**2. The State Most Familiar with the Governing Law**

Federal courts are equally equipped to apply distant state laws when the applicable law is not complex. *See, e.g.*, *Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (stating that a federal court in Texas would be equally adept at applying California law related unfair competition claims). Here, neither of the parties has asserted that the substantive law will be complex. Accordingly, regardless of the substantive state law applied in this case, both district courts are equally equipped to handle the case, and thus, this factor is neutral.

**3. The Plaintiff's Choice of Forum**

Horizon House's choice of forum weighs in favor in litigating this case in Washington. Courts in this district have affirmed that plaintiffs' choice of forum should be given great weight. *E.g., Nordquist v. Blackham*, No. C06-5433 FDB, 2006 WL 2597931, at *3 (W.D. Wash. Sept. 11, 2006) ("Ordinarily, a plaintiff's choice of forum is accorded substantial weight, and courts will not grant a motion under § 1404(a) unless the 'convenience' and 'justice' factors tip strongly in favor of transfer.") (citing *Piper*

---

*see also In re Roberts*, 414 Fed. Appx. 761, 763 (6th Cir. 2011) (citing *Black's Law Dictionary* to define execute). Although Cain Brothers signed the document in New York, it was not "executed" until Mr. Siver had signed the contract in Seattle, thereby rendering it enforceable against all parties. Consequently, the agreement between Horizon House and Cain Brothers was "executed" by Mr. Siver in Seattle—not in New York.

*Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)); *Wang v. LB Intern Inc.*, No. C04-2475JLR, 2005 WL 2090672, at *2 (W.D. Wash. Aug. 29, 2005) ("Courts usually will not disturb a plaintiff's choice of forum unless the 'convenience' and 'justice' factors strongly favor venue elsewhere.") (citing *Securities Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir.1985)).

Furthermore, the court finds that Cain Brother's removal of this case to federal court does not diminish the weight given to Horizon House's choice of forum. In *Oien v. Thompson*, No. 09-3068 (JRT/RLE), 2010 WL 2985032, at *5 (D. Minn. July 26, 2010), the court found that removal of the case to federal court did not affect the weight given to the plaintiff's choice of forum. *Id.* Specifically, the *Oien* court noted that a § 1404(a) analysis is primarily meant to evaluate "convenience factors based on geography," meaning that a court's analysis under § 1404(a) is largely based on factors that have little to do with whether a case was originally filed in state court. *Id.* That analysis is sound. The court, therefore, finds that in the present case the plaintiff's choice of forum maintains the great weight it is commonly given, irrespective of the case's removal from state court.

**4. The Parties' Contacts with the Forum**

Although both parties have contacts with the present forum, Horizon House has only limited contact with New York. Horizon House is a Washington non-profit corporation that conducts business solely within the state. (Siver Decl. ¶ 4.) Beyond the present case, the only contact the Horizon House has with New York is its upcoming mediation with LBSF. (*Id.* ¶ 19.)

In contrast, Cain Brothers, while headquartered in New York, regularly conducts business in Washington. (*Id.* ¶ 15.) Cain Brothers' employees, including Ms. Kirchloff, traveled to Seattle to meet with Mr. Siver. (*Id.*) Additionally, Cain Brothers advertises on its website that it conducts business in Washington. (Resp. (Dkt. # 24) at 3-4 .) Although Cain Brothers has substantial contacts with New York, the court finds that transferring venue is not warranted based on Horizon House's limited contacts with the Southern District of New York, and both parties' contacts with the Western District of Washington.

**5. The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum**

The events underlying Horizon House's cause of action occurred in several forums. As noted, the agreement at the center of the dispute between Horizon House and Cain Brothers was negotiated between parties who were located in Seattle and Los Angeles. (Siver Decl. ¶ 8.) Cain Brothers drafted and signed the agreement in New York and then sent it to Seattle for final approval. (Smith Aff. (Dkt. # 21) ¶ 9.) The agreement was then formally executed by Mr. Siver in Seattle. (Siver Decl. ¶ 9.)

For the purposes of § 1404(a), courts consider a number of varying factors when determining the "the situs" of the action, including where the contract was negotiated and executed, where business decisions causing the breach of contract took place, and where the alleged conduct was directed. *See Nike Inc. v. Lombardi*, 732 F. Supp. 2d 1146, 1159 (D. Or. 2010) (stating that the situs of the action is where the contract in dispute was negotiated and where the "misrepresentations" were directed); *Hyatt Corp. v. Personal*


*Commc'n Indus.*, No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004) (stating that the situs of the action is where the contract was negotiated and executed and where business decisions causing the breach took place).

In the present case, the business decisions allegedly causing the breach of the contract were made in New York, while the contract was negotiated from and executed in Seattle. Additionally, the consequences of the alleged breach of contract were experienced in Washington. Thus, Horizon House's cause of action relates more to the current forum than the Southern District of New York.

**6. The Differences in the Costs of Litigation in the Two Forums**

The court finds that the net litigation costs would not be significantly reduced by transferring this case to New York. As this court noted in *Wang*, "the transfer must be 'to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.'" *Wang*, 2005 WL 2090672, at *1 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645-46, (1964)).

Here, transferring the venue to New York would only shift the costs from Cain Brothers to Horizon House, not reduce them. The two parties are based on opposite sides of the country. (Siver Decl. ¶ 3; Smith Aff. ¶ 5.) Furthermore, both point to witnesses who would be forced to travel across the country regardless of where the case is tried. (Mot. at 9-10; Resp. at 18.) Specifically, Horizon House lists six primary witnesses: Bob Anderson, Horizon House's Chief Executive Officer who resides in Seattle; Carl Siver, Horizon House's CFO who also resides in Seattle; Katherine Kirchoff, Cain Brothers' Managing Director who is in Los Angeles; Chris Everett, Cain Brothers' Senior Vice

President who is in New York; Scott Smith, Cain Brothers' Managing Director who is a Florida resident who periodically works in New York; and Irene Fischer, a Seattle-based attorney who assisted Horizon House with its financial transactions. (Resp. at 18.)

Beyond the witnesses cited by Horizon House, Cain Brothers lists nine additional non-party witnesses located in New York.[3] The court, however, finds the value of these witnesses to be minimal. Of the nine witnesses listed by Cain Brothers, eight are allegedly connected to the present case solely through their involvement with the dispute between Horizon House and LBSF. Furthermore, Cain Brothers states that seven of the nine witnesses will discusses the same topics—the reasonableness of any settlement between Horizon House and LBSF and the adequacy of Horizon House's defense. (Mot. at 9-10.) Accordingly, it is reasonable to conclude that some of this testimony will be duplicative and unnecessary. Thus, it appears the actual number of witnesses needing to travel between forums is more balanced than Cain Brothers asserts. Therefore, a transfer of venue to New York would largely shift costs, rather than reduce them.

Finally, although Cain Brothers makes the legitimate argument that Horizon House's ongoing dispute with LBSF in New York may lessen the financial burden put on Horizon House by litigating this case in New York, it does not appear that such a

---

[3] Cain Brothers lists the following non-party witnesses: Denis Forster (Horizon House's counsel of record in its dispute with LBSF and the present case), Courtney Jenkins (LBSF), Seth Konheim (LBSF), Cherry Liang (LBSF), Bill Lee (LBSF), Locke R. McMurry (LBSF's contact in relation to the dispute with Horizon House), Lawrence Brandman (LBSF's contact in relation to the dispute with Horizon House), Richard Levine (counsel for LBSF in its dispute with Horizon House), and Sujan Trivedi (counsel for LBSF in its dispute with Horizon House). (Mot. at 9-10.)

reduction would be significant. There is no assurance that the mediation, or potential litigation, between Horizon House and LBSF will coincide temporally with the present case. Furthermore, Cain Brothers has not asserted that that the two cases are likely to be consolidated. The court thus finds that Horizon House's dispute with LBSF will not significantly reduce the costs of litigating this case in New York. Even assuming this factor did weigh in favor of transfer, it does not, on balance, overcome all of the other factors that weigh against transfer.

### 7. The Availability of Compulsory Process to Compel Attendance of Unwilling Witnesses

In the present case, there are a number of non-party witnesses who reside in several locations across the country and outside of the subpoena power of either the Southern District of New York or the Western District of Washington. (Mot. at 9-10; Resp. at 18.) Because there is no one district that commands subpoena power over the vast majority of non-party witnesses, the court finds that transferring the case to New York would not increase the number of witnesses in attendance.

### 8. The Ease of Access to Sources of Proof

Transferring venue in this case would not significantly alter the parties' access to evidence. Beyond the availability of witnesses, both parties focus on the location of pertinent documents. Cain Brothers stresses that a significant number of documents relating to the dispute between LBSF and Horizon House are located in New York. (Mot. at 11-12.) As Cain Brothers admits, however, the location of documents is not dispositive because documents "can be transported with relative ease." (Reply (Dkt. #

27) at 13.) Furthermore, Horizon House highlights the fact that many relevant documents are located in Washington and California. (Resp. at 22.) Thus, the court finds that the location of documents does not favor a transfer of venue.

**9. The Public Policy of the Forum State**

Public policy considerations favor litigating this case in Washington. Forum states have an interest in providing redress for their injured residents. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (noting that "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured" in a case determining personal jurisdiction). Furthermore, the median length of time to trial is over 12 months shorter in this district as compared to the Southern District of New York. (Resp. at 24.) Together, these facts weigh in favor of litigating this case in Washington.

**10. Weighing the *Jones* Factors**

The court, having considered all the factors promulgated by the *Jones* court, finds that transfer of venue is not warranted. The location where the agreement was negotiated and executed, Horizon House's choice of forum, the respective parties' contacts with the chosen forum, the contacts relating to Horizon House's cause of action, and the public policy of the forum state all weigh against transferring venue. Only one factor—the differences in costs in of litigation in the two forums—arguably weighs in favor of transfer. That factor alone, however, does not outweigh the others. Accordingly, the Western District of Washington is the proper forum for this case.

**A. CONCLUSION**

For all of the reasons stated above, the court DENIES Defendant's motion to

1 transfer venue (Dkt. # 20).

2 Dated this 7th day of February, 2012.

JAMES L. ROBART
United States District Judge